UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JUSTIN LLEWELLYN,

        Petitioner,

v.                                                   20-CV-498 (JLS)

JULIE WOLCOTT, Orleans
Superintendent,

        Respondent.

---

## DECISION AND ORDER

*Pro se* petitioner Justin Llewellyn, an inmate at Orleans Correctional Facility, petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking immediate release based on the conditions of his confinement during the COVID-19 pandemic. *See* Dkt. 1. Respondent Julie Wolcott moved to convert Llewellyn's petition to one brought pursuant to 28 U.S.C. § 2254 and to stay her response on the merits until after the Court decides the motion to convert. *See* Dkt. 6. The Court granted Respondent's motion to the extent it sought a stay and ordered Llewellyn to respond to the motion to convert. *See* Dkt. 7. For the following reasons, the Court now grants Respondent's motion to convert the petition.

## FACTS

Llewellyn currently is in custody at Orleans Correctional Facility ("Orleans") "on orders held by state authorities." *See* Dkt. 1, at 1 ¶¶ 2, 4.[1] He is serving a two-and-a-half year sentence for a non-violent drug offense. *See id.* at 3; *see also* Dkt. 6-3 (documenting Llewellyn's conviction and sentence). Llewellyn alleges variously that less than six months, less than ten months, and less than a year remain until his release date. *See* Dkt. 1, at 3, 6 ¶ 7, 7 ¶ 11, 10 ¶ 20.[2]

Llewellyn describes Orleans as a "medium-security prison in which all areas are shared with a plethora of individuals." *See* Dkt. 1, at 4 ¶ 4. He alleges that "social distancing is whol[l]y unavailable," making him more likely to contract COVID-19. *See id.* at 7 ¶ 11; *see also id.* at 10 ¶ 18 (alleging that "social distancing and shying away from communal areas is exactly impossible"). For example, Llewellyn alleges that "sleeping quarters . . . are five feet apart" and are "barrack-style dorms." *See id.* at 4 ¶ 4, 10 ¶ 18. Dining is "communal," with food served by fellow prisoners. *See id.* at 4 ¶ 4. Inmates also must "use the same sinks, toilets and showers with 60 people on a housing unit." *See id.* at 10 ¶ 18. Llewellyn alleges that "virtually everything is closed in DOCCS," including all programs, which leaves "persons on the housing unit together unable to social distance 24-7."

---

[1] Page references to the petition (Dkt. 1) are to the numbering generated by CM/ECF, which appears in the header of each page.

[2] According to Respondent, Llewellyn's earliest release date is February 14, 2021. *See* Dkt. 6-4.

*See id.* at 8 ¶ 12; *see also id.* at 5 ¶ 6 ("All DOCCS programs are shut down leaving all medium security prisoners no choice but to congregate 24 hours a day.").

About DOCCS generally, Llewellyn alleges that "hundreds of staff . . . are infected" and that "several American prisoners have lost their lives to this virus." *See* Dkt. 1, at 5 ¶ 6. He later suggests that Orleans does not have any confirmed COVID-19 cases. *See id.* at 10 ¶ 19 ("[W]ith already confirmed cases in DOCCS it is inevitable that COVID-19 has or will reach his instant facility."). Llewellyn alleges that "staff have been ordered to wear facemasks whilst working" but "have only been using them when their supervisors are present." *See id.* at 5 ¶ 6.

Because he "has pre-existing health conditions, including asthma," Llewellyn alleges that he is "at higher risk to be severely damaged from COVID-19." *See* Dkt. 1, at 5 ¶ 5. As a result of these conditions, Llewellyn seeks "immediate release and transfer[] to New York's already existing post-release supervision." *See id.* at 2 ¶ 6, 11.

## PROCEDURAL HISTORY

Llewellyn filed his petition on April 24, 2020. Dkt. 1. On April 29, 2020, he moved to proceed *in forma pauperis*.[3] Dkt. 3. The Court granted him permission to proceed *in forma pauperis* on May 1, 2020, and set a briefing schedule, ordering Respondent to respond to the petition within five days. *See* Dkt. 4.

---

[3] Llewellyn also moved to proceed *in forma pauperis* on April 24, 2020, but that motion did not include a completed prison certification section. *See* Dkt. 2.

On May 5, 2020, Respondent moved to convert Llewellyn's petition to one brought pursuant to Section 2254 and to stay her response on the merits until after the Court decides her motion to convert. *See* Dkt 6. The next day, the Court granted Respondent's motion to the extent it requested a stay and ordered Llewellyn to respond to the motion to convert by May 13, 2020. *See* Dkt. 7. The Court also cautioned that a decision to convert the petition could affect Llewellyn's ability to file another Section 2254 petition and, with that knowledge, asked Llewellyn to confirm that he wished to proceed with the petition. *See id.*

On May 12, 2020,[4] Llewellyn moved for summary judgment, asking the Court to grant his petition and arguing that Respondent did not respond to the petition consistent with the Court's May 1 order. *See* Dkt. 8, at 3-4. And on May 14, 2020, Llewellyn filed an opposition to Respondent's motion to convert.[5] *See* Dkt. 9. Llewellyn recognized the Court's warning about the effect its decision could have on his ability to file a second habeas corpus petition and stated that "he wishes to proceed with his petition." *See id.* at 4 ¶ 11.

---

[4] Llewellyn's motion was docketed on May 12, 2020, but is dated May 6, 2020. *See* Dkt. 8, at 1.

[5] Llewellyn states that he "never received any motions from the respondent." *See* Dkt. 9, at 1 ¶ 1. The Court notes that Respondent's counsel filed a declaration that she served Respondent's motion on Llewellyn at Orleans on May 5, 2020. *See* Dkt. 6-5. In light of Llewellyn's claim that he did not receive the motion, the Court will direct the Clerk of Court to send Dkt. 6 to Llewellyn.

**DISCUSSION**

Because Llewellyn is a *pro se* petitioner, the Court will "construe [his] pleadings liberally and interpret them 'to raise the strongest arguments they suggest.'" *See Wells v. Annucci*, No. 19-cv-3841, 2019 WL 2209226, at *1 (S.D.N.Y. May 21, 2019) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).

I. **Respondent's Motion to Convert.**

Respondent moved to convert Llewellyn's petition under Section 2241 to a petition pursuant to Section 2254 because relief under Section 2241 is not available to Llewellyn, who is in custody under a state-court judgment of conviction. *See* Dkt. 6; Dkt. 6-1, at 2 ¶ 4. Llewellyn opposes Respondent's motion and argues that Section 2241 is appropriate because he is challenging the conditions of his confinement, not the execution of his sentence, and because he does not challenge his conviction. *See* Dkt. 9, at 2 ¶¶ 5-6.

**A. Habeas Corpus Relief.**

There are three statutes under which an individual in custody may seek a writ of habeas corpus, two of which are relevant here. Section 2254 applies to "a person in custody pursuant to the judgment of a State court . . . on the ground that he is in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). Section 2241 is worded more broadly and extends to a prisoner who, among other things, is "in custody under . . . the authority of the United States" or is "in custody in violation of the Constitution or laws . . . of the United

5

States." *See* 28 U.S.C. § 2241(c)(1), (3). And Section 2255, which does not apply here, allows a "prisoner in custody under sentence of a court established by Act of Congress"—*i.e.*, a federal prisoner—to attack his sentence. *See* 28 U.S.C. § 2255(a).

The Second Circuit has addressed the difference among these provisions. A person in federal custody may petition for a writ of habeas corpus under Section 2255 or Section 2241, depending on the nature of the challenge: "a federal prisoner's challenge to the *execution* of a sentence is properly filed pursuant to [Section] 2241, rather than Section 2255, because Section 2255 allows a federal prisoner to challenge only the legality of the original *imposition* of a sentence." *See James v. Walsh*, 308 F.3d 162, 166 (2d Cir. 2002) (citing *Chambers v. United States*, 106 F.3d 472, 474 (2d Cir. 1997)). By contrast, Section 2254 "permits a state prisoner to file a habeas petition 'on the ground that he is in custody in violation of the Constitution or laws . . . of the United States.'" *Id.* at 166-67 (quoting 28 U.S.C. § 2254(a)). In other words, a "claim that one is 'in custody' in violation of federal laws [under Section 2254] is broader than a claim that the imposition of one's sentence is illegal." *Id.* at 167.

The "plain language of the pertinent statutes indicates . . . that a federal prisoner may challenge the imposition, but not the execution, of a sentence under Section 2255, while a state prisoner may challenge either the imposition or the execution of a sentence under Section 2254." *James*, 308 F.3d at 167. As a result, a state prisoner's "petition claiming improper execution of his sentence [is] properly brought under Section 2254." *Id.*

6

The Second Circuit later expanded on this analysis when it considered a parole revocation challenge, concluding that "a state prisoner challenging his or her parole revocation must file under section 2254." *See Cook v. N.Y. State Div. of Parole*, 321 F.3d 274, 275 (2d Cir. 2003). Comparing a person in custody on a state judgment to one in custody on a federal judgment, the court explained that a state prisoner "not only may, but according to the terms of section 2254 must, bring a challenge to the execution of his or her sentence . . . under section 2254." *See id.* at 278. Section 2241 is "unavailable" to such a petitioner. *See id.* Stated otherwise, "Section 2241 is not an independent and separate avenue of relief but is to be read in conjunction with the requirements of [Section] 2254, which are 'a limitation on the general grant of jurisdiction conferred in section 2241 that applies to cases involving prisoners subject to state court judgments.'" *Torres v. Cronin*, No. 19-cv-6462, 2019 WL 6001000, at *1 (W.D.N.Y. Nov. 14, 2019) (quoting *Rittenberry v. Morgan*, 468 F.3d 331, 337 (6th Cir. 2006)).

Llewellyn is in state custody pursuant to a state judgment. *See* Dkt. 1, at 1 ¶ 4; Dkt. 6-3. He alleges that his continued custody at Orleans during the COVID-19 pandemic violates his rights under the 5th, 8th, and 14th Amendments to the United States Constitution. *See* Dkt. 1, at 6 ¶¶ 6-8, 8 ¶¶ 12-14. In other words, Llewellyn claims that his continued custody in execution of his sentence violates his

constitutional rights. As such, his petition falls within the purview of Section 2254.[6]

The Court is not bound by Llewellyn's choice to frame his petition under Section 2241 and, after considering the substance of his allegations, must convert the petition to one filed pursuant to Section 2254.[7] *See Cook*, 321 F.3d at 277 ("[I]f an application that should be brought under 28 U.S.C. § 2254 is mislabeled as a

---

[6] Llewellyn argues that his petition is based on the conditions of his confinement and, therefore, does not challenge the execution of his sentence. *See* Dkt. 9, at 2 ¶¶ 5-6. The Second Circuit has interpreted prison condition claims as comprising challenges to execution of a sentence in the context of federal prisoners. *See Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008) ("This court has long interpreted § 2241 as applying to challenges to the execution of a federal sentence, 'including such matters as the administration of parole, . . . prison disciplinary actions, prison transfers, type of detention and prison conditions.'" (citation omitted)). There is no reason to conclude differently in the context of a state prisoner's prison conditions-based claim under Section 2254.

[7] The Court recognizes that district courts across the country have treated state prisoners' COVID-19-related habeas petitions differently. *Compare Makin v. Wainwright*, No. 20-cv-912, 2020 WL 2085141, at *1 (N.D. Ohio Apr. 30, 2020) (holding that state prisoner's habeas petition "was not properly brought under [Section] 2241" and that Section 2254 was the proper provision), *and Money v. Pritzker*, — F. Supp. 3d — , 2020 WL 1820660, at *2 (N.D. Ill. Apr. 10, 2020) (examining petition for "writs of habeas corpus under 28 U.S.C. § 2254 for relief from custody in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution"), *with McPherson v. Lamont,* — F. Supp. 3d — , 2020 WL 2198279, at *5 & n.3 (D. Conn. May 6, 2020) (holding that Section 2241 was the proper provision for sentenced and pre-trial prisoners in state custody based on Second Circuit cases, *Roccisano v. Menifee*, 293 F.3d 51 (2d Cir. 2002), and *Adams v. United States*, 372 F.3d 132 (2d Cir. 2004), that involved *federal* prisoners' habeas claims). The Court has considered these decisions, but bases its analysis on the Second Circuit authority cited above.

petition under section 2241, the district court must treat it as a section 2254 application instead."); *Torres*, 2019 WL 6001000, at *2 (concluding that petitioner was limited to relief under Section 2254, noting that petitioner's framing under Section 2241 was not dispositive, and converting to a Section 2254 petition).

### B. Section 1983 Relief.

Neither party argues that 42 U.S.C. § 1983 applies to Llewellyn's claims. Because Llewellyn is proceeding *pro se* and because his petition challenges the conditions of his confinement, the Court briefly addresses Section 1983, as well.

The Supreme Court has recognized that "the traditional function of the writ [of habeas corpus] is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). As such, claims alleging that prison officials' conduct "was causing or would cause . . . illegal physical confinement" and seeking relief equal to "immediate release from physical custody" fall "squarely within th[e] traditional scope of habeas corpus." *See id.* at 487.

Relying on *Preiser*, the Second Circuit later recognized that the "problem of deciding which prisoner petitions must be considered exclusively as petitions for habeas corpus under [Section] 2254 . . . and which lie properly as civil rights actions under 42 U.S.C. [§] 1983 . . . has not been . . . easy." *Williams v. Ward*, 556 F.2d 1143, 1150 (2d Cir. 1977). The court noted that that a petition "protesting against prison conditions, but not seeking release, . . . clearly falls" under Section 1983 but did not consider whether the same petition seeking release would require a different conclusion. *See id.* at 1150.

Llewellyn unambiguously seeks "immediate release and . . . transfer[] to New York's already existing post-release supervision." *See* Dkt. 1, at 2 ¶ 6; *id.* at 11. To be sure, he alleges that the conditions of his confinement render his custody unconstitutional. *See id.* at 6 ¶ 8; *id.* at 8 ¶ 14. But he does not seek an order directing prison or state officials to improve or correct any alleged deficiencies in those conditions; he seeks only immediate release from physical custody. *See id.* Accordingly, Llewellyn's claims fall "squarely within th[e] traditional scope of habeas corpus." *See Preiser*, 411 U.S. at 487; *see also Evil v. Whitmer*, No. 20-cv-343, 2020 WL 1933685, at *2-*3 (W.D. Mich. Apr. 22, 2020) ("Petitioner's claims regarding the constitutionality of his custody in the jail because of his particular susceptibility to respiratory disease are principally claims regarding the conditions of his confinement. Such claims should be raised by a complaint for violation of 42 U.S.C. § 1983. But, the relief Petitioner seeks—release from custody—is available only upon habeas corpus review. A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983." (citing *Preiser*, 411 U.S. at 484)).

## II.     Llewellyn's Motion for Summary Judgment.

Llewellyn also moved for summary judgment on his petition because Respondent "failed to respond to the factual pleadings as ordered by [the Court]." *See* Dkt. 8, at 4 ¶¶ 9-10. He cites this Court's May 1, 2020 order that Respondent respond to the petition within 5 days of service of its order. *See id.* at 3 ¶ 5; *see also* Dkt. 4. Respondent filed a motion in response to the petition—albeit not on the

merits—on May 5, which was timely under the Court's May 1 order. *See* Dkt. 6. The Court therefore denies Llewellyn's motion for summary judgment as moot.

## **CONCLUSION**

For the reasons stated above, the Court: GRANTS Respondent's motion to convert the petition, filed under 28 U.S.C. § 2241, to one filed under 28 U.S.C. § 2254 (Dkt. 6); and DENIES Llewellyn's motion for summary judgment (Dkt. 8).

The Clerk of Court shall update the docket to reflect that Llewellyn's petition was filed pursuant to 28 U.S.C. § 2254 and shall mail Llewellyn a copy of Dkt. 6, along with this decision and order.

The parties' further submissions on the merits are governed by the Court's May 6, 2020 order (Dkt. 7).

SO ORDERED.

Dated:   May 18, 2020
         Buffalo, New York

                                         s/ John L. Sinatra, Jr.
                                         JOHN L. SINATRA, JR.
                                         UNITED STATES DISTRICT JUDGE