UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JUSTIN LLEWELLYN,

          Petitioner,

    v.                                                          20-CV-498 (JLS)

JULIE WOLCOTT, Orleans
Superintendent,

          Respondent.

_____

## DECISION AND ORDER

*Pro se* petitioner Justin Llewellyn is in custody at Orleans Correctional

Facility pursuant to a state court judgment of conviction.  He petitioned this Court

for a writ of habeas corpus, seeking immediate release based on the conditions of his

confinement during the COVID-19 pandemic.  *See* Dkt. 1.  The Court previously

converted Llewellyn's petition to one filed pursuant to 28 U.S.C. § 2254.  Dkt. 10.

Respondent Julie Wolcott then moved to dismiss the petition on procedural grounds.

Dkt. 11-1.  Llewellyn opposed Respondent's motion.  Dkt. 13.  For the following

reasons, the Court grants Respondent's motion and dismisses Llewellyn's petition

without prejudice.

## BACKGROUND

Llewellyn currently is in custody at Orleans Correctional Facility ("Orleans") "on orders held by state authorities," serving a two-and-a-half-year sentence for a non-violent drug offense. *See* Dkt. 1, at 1 ¶¶ 2, 4, 3;[1] *see also* Dkt. 6-3 (documenting Llewellyn's conviction and sentence). Less than a year remains until his release date. *See* Dkt. 1, at 3, 6 ¶ 7, 7 ¶ 11, 10 ¶ 20; Dkt. 6-4 (citing Llewellyn's earliest release date as February 14, 2021).

According to Llewellyn, the conditions of his confinement at Orleans during the COVID-19 pandemic violate his Eighth and Fourteenth Amendment rights. Dkt. 1, at 8 ¶ 14. Specifically, Orleans is a "medium-security prison in which all areas are shared with a plethora of individuals," in which "social distancing is whol[l]y unavailable." *See* Dkt. 1, at 4 ¶ 4; *see id.* at 5 ¶ 6, 7 ¶ 11, 8 ¶ 12, 10 ¶ 18. Llewellyn alleges that "sleeping quarters . . . are five feet apart" in "barrack-style dorms." *See id.* at 4 ¶ 4, 10 ¶ 18. Dining is "communal," with food served by fellow prisoners. *See id.* at 4 ¶ 4. Inmates also must "use the same sinks, toilets and showers with 60 people on a housing unit." *See id.* at 10 ¶ 18.

Llewellyn alleges that, in DOCCS generally, "hundreds of staff . . . are infected" and "several American prisoners have lost their lives to this virus," *see* Dkt. 1, at 5 ¶ 6, but suggests that Orleans does not have any confirmed COVID-19 cases, *see id.* at 10 ¶ 19. Llewellyn alleges that "staff have been ordered to wear

---

[1] Page references to the petition (Dkt. 1) are to the numbering generated by CM/ECF, which appears in the header of each page.

facemasks" but only wear them "when their supervisors are present." *See id.* at 5 ¶ 6.

Because he "has pre-existing health conditions, including asthma," Llewellyn alleges he is "at higher risk to be severely damaged from COVID-19." *See* Dkt. 1, at 5 ¶ 5. As a result, Llewellyn seeks "immediate release and transfer[] to New York's already existing post-release supervision." *See id.* at 2 ¶ 6, 11.

Llewellyn does not allege that he sought relief in state court from the constitutional violations he claims. *See generally* Dkt. 1. Respondent's counsel contacted New York State Supreme Court, Orleans County, and searched the Attorney General's Office records to determine if Llewellyn initiated state proceedings related to his habeas claims here. *See* Dkt. 11-1, at 2 ¶ 5.[2] As of May 26, 2020, no such records were identified. *See id.* Llewellyn argues, however, that "there were no available state remedies at the time" he filed his petition. *See* Dkt. 13, at 3 ¶ 2. Respondent submitted an order from the Chief Administrative Judge of New York State Courts stating that, despite limited operations during the COVID-19 pandemic, state courts remained open for essential proceedings like "[b]ail applications, reviews and writs" and "emergency applications related to the coronavirus." *See* Dkt. 11-4 (Ex. 3).

---

[2] Page references to Dkt. 13 are to the numbering generated by CM/ECF, which appears in the header of each page.

## DISCUSSION

Because Llewellyn is a *pro se* petitioner, the Court will "construe [his] pleadings liberally and interpret them 'to raise the strongest arguments they suggest.'" *See Wells v. Annucci*, No. 19-cv-3841, 2019 WL 2209226, at *1 (S.D.N.Y. May 21, 2019) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). Llewellyn is entitled to liberal construction of his submissions, but his *pro se* status "does not exempt [him] from compliance with the relevant rules of procedural and substantive law." *See Siao-Pao v. Connolly*, 564 F. Supp. 2d 232, 238 (S.D.N.Y. 2008) (internal quotations and citations omitted).

## I.   Respondent's Motion to Dismiss.

Respondent argues that the Court must dismiss Llewellyn's petition because (1) habeas relief is not available for a conditions of confinement claim; and (2) Llewellyn failed to exhaust available state court remedies. *See* Dkt. 11-1, at 2-3 ¶ 7.

### A.   Failure to Exhaust.

As this Court previously explained, a sentenced state prisoner who claims he is in state custody in violation of federal law may seek relief from a federal court by petitioning for a writ of habeas corpus under 28 U.S.C. § 2254(a). *See* Dkt. 10, at 5-8. Section 2254 requires a petitioner to show that he "exhausted the remedies available in the courts of the State" before a federal court will consider his habeas claims. *See* 28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) ("Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."). To exhaust state remedies, a

4

petitioner must "fairly present federal claims to the state courts . . . to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *McCray v. New York*, 573 F. App'x 22, 23 (2d Cir. 2014) (quoting *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011)). A petitioner exhausts his constitutional claims when he "presented [them] to the highest state court from which a decision can be obtained." *Lewis v. Bennett*, 328 F. Supp. 2d 396, 403 (W.D.N.Y. 2004) (citing *Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000)).

There are several ways a petitioner may exhaust his claims. As relevant here, where the claim for relief is not based on the trial court record, a petitioner may exhaust the claim by raising it to the state trial court in a collateral post-conviction motion, such as a motion under New York Criminal Procedure Law § 440. *See Elleby v. Smith*, No. 20-cv-2935, 2020 WL 2611921, at *3 (S.D.N.Y. May 22, 2020). Or a petitioner may petition the trial court or appropriate Appellate Division for a writ of habeas corpus and seek review of any decision denying the petition. *Id.*[3] Even when a petitioner challenges the execution, rather than validity, of his sentence under Section 2254, he "is still required to exhaust all of his state court remedies before filing a habeas petition in state court, and . . . bears the burden of establishing that [he] has met this requirement." *Rapeika v.*

---

[3] Where a petitioner's claim is based on the trial court record—which is not the case here—he may exhaust by filing a direct appeal to the relevant Appellate Division and seeking leave to appeal to the New York Court of Appeals. *See Elleby*, 2020 WL 2611921, at *3.

*Administrator of Northern State Prison*, No. 20-cv-5358, 2020 WL 2092790, at *1 (D.N.J. May 1, 2020).

Respondent did not locate any filings or evidence that Llewellyn presented his claims to, or sought release in, a state court. *See* Dkt. 11-1, at 2 ¶ 5. And Llewellyn did not provide any evidence that he exhausted his claims in state court. In fact, he states that "there were no available state remedies at the time" he filed his petition, which was sworn to on April 19, 2020. *See* Dkt. 13, at 3 ¶ 2; *see also* Dkt. 1, at 12. Llewellyn did not establish that he exhausted his claims, so the Court next considers whether he may be excused from exhausting.

Section 2254 provides two narrow exceptions to its exhaustion requirement. A federal court may grant a petitioner's unexhausted petition for habeas relief if: (1) "there is an absence of State corrective process"; or (2) "circumstances exist that render [the State corrective process] ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B)(i)-(ii). In other words, a petitioner need not exhaust his claims when "there is no further state proceeding for petitioner to pursue" or where such pursuit "would be futile." *See Elleby*, 2020 WL 2611921, at *4 (quoting *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000)).

Neither exception applies here. State court proceedings were available to Llewellyn when he submitted his petition on April 19, 2020, and they remain available now. *See Elleby*, 2020 WL 2611921, at *4; Dkt. 1, at 12. Even on March 22, 2020, New York state courts' limitations on filings did not apply to "emergency applications related to the coronavirus." *See* Dkt. 11-4 (Ex. 3). Indeed, New York

state courts have received, and resolved, claims and petitions seeking release from state custody in connection with the COVID-19 pandemic. *See, e.g.*, *People ex rel. Squirrell v. Langley*, No. 500451/2020, 2020 WL 2736623 (Sup. Ct. Putnam Cty. May 25, 2020) (dismissing habeas corpus petitions by inmates seeking release during the COVID-19 pandemic where the court, after thoroughly examining the measures taken by the sheriff and other officials, concluded there was no violation of petitioners' due process or Eighth Amendment rights); *People ex rel. Stoughton v. Brann*, No. 451078/2020, 2020 WL 1679209 (Sup. Ct. N.Y. Cty. Apr. 6, 2020) (ordering release of 18 "at-risk" prisoners in a due process challenge by 32 petitioners detained at Rikers Island); *People ex rel. Gregor v. Reynolds*, No. CV20-150, 2020 WL 1910116 (Sup. Ct. Essex Cty. Apr. 17, 2020) (concluding, where several inmates detained pending parole violation proceedings filed Article 70 petitions for release, that sheriff's failure to take adequate protective measures violated the due process rights of an inmate who was vulnerable to COVID-19).

Llewellyn's claim that state courts are unavailable to him, "without any further factual or legal allegations to support his claim," is "inadequate to show that there [was or] is no available process in the state courts." *See Rapeika*, 2020 WL 2092790, at *2. Courts may excuse petitioners from exhausting their claims when "relief is truly unavailable," but excusing exhaustion here, where state courts are available "would turn the habeas system upside down." *See Money v. Pritzker*, No. 20-cv-2093, 2020 WL 1820660, at *22 (N.D. Ill. Apr. 10, 2020); *see also* Dkt. 11-1, at 2 ¶ 6 ("On March 22, 2020, the Chief Administrative Judge of the New York State

Courts, ordered that "emergency applications related to the coronavirus" filed in New York State Supreme Court are deemed "essential proceedings."). For the same reasons, Llewellyn did not demonstrate that pursuing his request for release in state court would have been futile. *See Elleby*, 2020 WL 2611921, at *4.

Other courts have reached similar conclusions when faced with habeas petitions seeking release from state custody based on the COVID-19 pandemic. *See Griffin v. Cook*, No. 3:20-cv-589 (JAM), 2020 WL 2735886, at *5 (D. Conn. May 26, 2020) (collecting cases); *Elleby*, 2020 WL 2611921, at *5.

Requiring exhaustion of Llewellyn's claims in state court affords "the state court[] . . . the first opportunity to review [his] claim[s] and provide any necessary relief." *See O'Sullivan*, 526 U.S. at 844; *see also Rose v. Lundy*, 455 U.S. 509, 515 (1982) ("[A]s a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act."). Exhaustion also ensures that, if Llewellyn's petition ends up back in federal court, it will "be accompanied by a complete factual record to aid [the Court] in [its] review." *See Rose*, 455 U.S. at 519. A full factual record is particularly important here, in light of the "rapidly changing conditions in prison and the evolving steps that prisons are taking to meet the unprecedented challenges presented by the pandemic." *See Elleby*, 2020 WL 2611921, at *5.

Because Llewellyn did not exhaust his habeas claims in state court and did not demonstrate that either state courts were or are unavailable to him or that

exhaustion is futile, the Court dismisses his petition without prejudice.[4]  Llewellyn

may pursue his claims and request for release in state court.

### B.    Failure to State a Cognizable Claim for Section 2254 Relief.

Alternatively, Respondent argues that Llewellyn's petition must be dismissed

because he may not assert a conditions of confinement claim in a Section 2254

petition. *See* Dkt. 11-1, at 2 ¶ 7.  Because the Court dismisses Llewellyn's petition

for failure to exhaust, it need not reach this alternative argument.

### C.    Reserving the Merits for the State Court.

Section 2254 allows a district court to, "in its discretion, *deny* on the merits

habeas petitions containing unexhausted claims." *See Lewis*, 328 F. Supp. 2d at

405.  The Court declines to exercise that discretion here and leaves the merits of

Llewellyn's Eighth Amendment and due process claims for the state court to decide

in the first instance.

---

[4] The Court notes that Llewellyn would have been required to exhaust his habeas claims in state court if the Court had denied Respondent's motion to convert the petition and analyzed Llewellyn's claims under 28 U.S.C. § 2241. *See Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632-35 (2d Cir. 2001) (citing the "requirement of administrative exhaustion as spelled out in . . . decisional law" that applies to Section 2241 petitions and declining to excuse petitioner's failure to exhaust); *Razzoli v. Strada*, No. 10-cv-4802, 2013 WL 837277, at *2 (E.D.N.Y. Mar. 6, 2013) (explaining that "[b]efore seeking habeas relief under § 2241, . . . prisoners must exhaust any available administrative remedies, or else justify the failure to exhaust these remedies," and holding that petitioner was "not excused from his duty to exhaust administrative remedies").

## II.   <u>Llewellyn's Motion for Summary Judgment.</u>

In a motion dated May 26, 2020, Llewellyn moved for summary judgment on his petition because Respondent had "yet to file any responses with the court on the merits of the petition" as the Court ordered. *See* Dkt. 12, at 3 ¶ 2.[5]  He cites this Court's May 6, 2020 order that Respondent respond to the petition on the merits within five days of the Court's order on Respondent's motion to convert. *See id.* at 2 ¶ 1; *see also* Dkt. 7.

Respondent moved to dismiss the petition on May 26, 2020.[6]  *See* Dkt 11. Her motion was timely under the briefing schedule in Dkt. 7.  *See* Fed. R. Civ. P. 6(a)(1)(C) ("When the period is stated in days . . . include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."). Because the Court grants Respondent's motion to dismiss on exhaustion grounds, it need not reach the merits of Llewellyn's Eighth Amendment and due process claims.  The Court therefore denies Llewellyn's motion for summary judgment.

---

[5] Page references to Dkt. 12 are to the numbering generated by CM/ECF, which appears in the header of each page.

[6] The Court acknowledges Llewellyn's claim that he is not receiving Respondent's filings "within a reasonable time period." *See* Dkt. 13, at 2.  The Court notes that each of Respondent's filings have been accompanied by a declaration of service, which states that Respondent's counsel mailed the submissions to Llewellyn on the date she filed them with the Court.  *See* Dkts. 6-5, 11-6.  Thus, the Court attributes the delay to the postal service and not to either party.

## CONCLUSION

For the reasons stated above, the Court:  GRANTS Respondent's motion to dismiss the petition (Dkt. 11); and DENIES Llewellyn's motion for summary judgment (Dkt. 12).  The Clerk of Court is directed to close this case.

In addition, because the issues raised here are not the type of issues that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, the Court concludes that Llewellyn did not make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2), and, accordingly, DENIES a certificate of appealability.

The Court also certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and, therefore, DENIES leave to appeal as a poor person. *See Coppedge v. United States*, 369 U.S. 438, 444-46 (1962).

Llewellyn must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within 30 days of the date of judgment in this action.  Requests to proceed on appeal as a poor person must be

filed with the United States Court of Appeals for the Second Circuit in accordance

with the requirements of  Rule 24 of the Federal Rules of Appellate Procedure.


SO ORDERED.


Dated:          June 11, 2020
                Buffalo, New York

                                        _____
                                        JOHN L. SINATRA, JR.
                                        UNITED STATES DISTRICT JUDGE